IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM J. DUMAS, )<br><br>)<br>Plaintiff, )<br><br>)<br>v. )<br><br>)<br>PENNSYLVANIA DEPARTMENT OF )<br>CORRECTIONS; PENNSYLVANIA )<br>DEPARTMENT OF PROBATION AND )<br>PAROLE; HARRY E. WILSON, Superintendent; )<br>JOANN MANN, Supervisor; MR. ASHTON, )<br>Counselor; MS. MINCUCCI, Counselor; MR. )<br>FLEAGLE, Counselor; C.O. WOOLEN, )<br>Correctional Officer; and C.O. GARRITY, )<br>Correctional Officer, )<br><br>)<br>Defendants. )| Civil Action No. 07 - 142<br><br>District Judge Gary L. Lancaster/<br>Magistrate Judge Lisa Pupo Lenihan |

REPORT AND RECOMMENDATION

I..       RECOMMENDATION

It is respectfully recommended that the Plaintiff's Complaint be dismissed in accordance with the Prison Litigation Reform Act, 28 U.S.C. § 1915(e)(2)(B)(ii) and/or 28 U.S.C. § 1915A for failure to state a claim upon which relief can be granted under 42 U.S.C. § 1983.

II.       REPORT

Plaintiff, William J. Dumas, a prisoner confined at the State Correctional Institution at Fayette, Pennsylvania, has commenced the present action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983.  For the reasons that follow, the action should be dismissed for failure to state a claim upon which relief may be granted.

A. <u>Standard of Review</u>

This Court must review Plaintiff's Complaint in accordance with the amendments promulgated in the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996).  Pertinent to the case at bar is the authority granted to federal courts for *sua sponte* screening and dismissal of prisoner claims.  Specifically, Congress enacted a new statutory provision at 28 U.S.C. § 1915A, entitled "Screening," which requires the court to review complaints filed by prisoners seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).  If the complaint is "frivolous, malicious, or fails to state a claim upon which relief can be granted," or "seeks monetary relief from a defendant who is immune from such relief," the court must dismiss the complaint.  28 U.S.C. § 1915A(b).

In addition, Congress significantly amended Title 28 of the United States Code, section 1915, which establishes the criteria for allowing an action to proceed in forma pauperis (IFP), *i.e.*, without prepayment of costs.  Section 1915(e) (as amended) requires the federal courts to review complaints filed by persons who are proceeding in forma pauperis and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).

Plaintiff is a prisoner and defendants are officers or employees of a governmental entity.  Plaintiff has been granted leave to proceed IFP in this action (doc. no. 3).  Thus his allegations must be reviewed in accordance with the directives provided in 28 U.S.C. §§ 1915A & 1915(e).  In reviewing complaints under 28 U.S.C. §§ 1915A & 1915(e), a federal court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).[1]  Dismissal is proper

---

[1] *See, e.g.*, <u>Bradley v. Puckett</u>, 157 F.3d 1022, 1025 (5th Cir. 1998); <u>Anyanwutaku v. Moore</u>,
(continued...)

under Rule 12(b)(6) if, as a matter of law, it is clear that no relief could be granted under any set of

facts that could be proved consistent with the allegations.  Hishon v. King & Spalding, 467 U.S. 69,

73 (1984); Conley v. Gibson, 355 U.S. 41 (1957).  Notwithstanding, a plaintiff must allege specific

facts supporting his claims to withstand dismissal for failure to state a claim.  Brock v. St. Joseph's

Hosp., 104 F.3d 358 (4th Cir. Dec. 23, 1996); Whitehead v. Becton, 1996 WL 761937 (D.C. Cir.

1996).

### B. Plaintiff's Allegations

Plaintiff complains about his placement and subsequent discharge from a prison

program, issues he encountered with his cellmate, his confinement in administrative custody, and the

failure to release him on parole.  In this regard, Plaintiff claims that he is a fifty-five year old black

man convicted of Driving Under the Influence of Alcohol.  Public records show that Plaintiff

received a sentence of from one to three years, effective date December 19, 2005.

Plaintiff states that he was transferred to SCI-Fayette from the Camp Hill classification

facility at the end of February, 2006.  At that time, he was threatened to enroll in a prison program

known as the Therapeutic Community (TC) whose aim is to treat drug and alcohol addiction. Plaintiff

claims that the TC counselors shouted at the participants, called them names and treated them "less

than human."

Next, Plaintiff complains about his cellmate, Cyrus Borum.  In this regard, Plaintiff

claims that Borum bossed him around and made him buy air freshener to use when he defecated in

the cell.  Plaintiff then noticed items missing from his locker.  When he asked Borum about it, Borum

took out a razor and began cutting pieces of the air freshener and telling Plaintiff about how he cut

---

[1](...continued)
 151 F.3d 1053 (D.C. Cir. 1998).

someone up once.  Plaintiff told the counselor about his missing items and was told to get a lock and stop acting "like a baby."  Plaintiff did not tell the counselors about the razor.  Instead, he asked to have his cell changed.  Sometime thereafter, an inmate counselor met with Dumas and Borum.  During the meeting, Dumas told the counselor that he was afraid of Borum and Borum said that he would change his behavior toward Dumas.

Sometime later, Borum failed to wake Plaintiff up for count until the officer was at the cell door.  Borum submitted a "pull-up" on Dumas for failing to stand during count.[2]  Dumas then was required to write a 500 word essay explaining the importance of standing during count and then read it to the TC group.

Two days later as Borum was walking out of  his cell, Dumas told him to tuck in his shirt.  Borum swore at him and continued walking and was reprimanded by a correctional officer shortly thereafter for not having his short tucked in.  The following day, Plaintiff was issued a pull-up for allowing Borum to leave the cell not properly attired.  During group, Dumas was directed to stand up and say "Thank you C.O. for making me aware."  Dumas refused and was required to lock down in his cell.  Plaintiff met with the counselors and again requested to be moved to a new cell.

Shortly thereafter, the medical department determined that Plaintiff should be celled in a first floor cell.  Subsequently, Plaintiff and Borum were told to pack up to move to first floor cell 1002.  Plaintiff states that a white inmate in cell 1002 was required to move because black and white inmates are not housed together in the same cell in accordance with DOC policy.

Plaintiff next states that, because he failed to say "Thank you C.O. for making me aware," he was targeted for removal from the TC program.  In this regard, he claims that he was

---

[2]  According to Plaintiff, a "pull-up" is a behavior slip submitted by peers to help inmates with unhealthy behaviors and attitudes and is a required part of the TC process.  Complaint, p. 13.

written up for failing to stand during count (he was getting off the bunk at the time) and for disobeying a direct order not to leave his cell during count (he was removing trash). Both write-ups became pull-ups and he was removed from the TC program, lost sixty days pay, and lost job and program eligibility for sixty days.

Immediately after being discharged from the TC, Plaintiff requested confinement in Administrative Custody (AC) due to his concerns about Borum and the razor he kept hidden in the cell. After three weeks in AC, Plaintiff asked to be transferred back to General Population due to the conditions of confinement in AC. In this regard, he claimed that the cells were filthy, he did not receive clean undergarments for two weeks, and the only thing he received to read was a Bible.

Next, he claims that in December of 2006, he learned that his father, who lived in New York, was dying from cancer. He learned he was being paroled on December 19, 2006, and decided to wait to see him when he was paroled. A few days before he was paroled, Plaintiff learned he would be paroled to a half-way house. A few days later, he learned his father had passed away and asked to be allowed to attend his funeral. DOC informed Plaintiff that he had to pay the expenses of up to $10,000.00 for correction officers to escort him to and from the funeral. A few days later, he learned that his parole program was changed and, eventually, was told that he would not be paroled because his Sentence Status Sheet indicated that a second sentence was to begin to run on July 18, 2006. Plaintiff filed a state Petition for Writ of Habeas Corpus regarding this error, which is pending in the Commonwealth Court of Pennsylvania. DOC records indicate that Plaintiff currently is incarcerated and has not been released on parole.

### C. Liability under 42 U.S.C. § 1983

Plaintiff asserts liability against Defendants pursuant to 42 U.S.C. § 1983. In order to assert liability under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must

allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).  The following discussion shows that Plaintiff's allegations do not set forth any violations of his constitutional rights.  Accordingly, his Complaint should be dismissed.

## 1. Eighth Amendment

Plaintiff claims that the conditions of his confinement violated the Eighth Amendment, which prohibits cruel and unusual punishment.  In order to make out a prima facie case that a prison official's actions violate the Eighth Amendment's prohibition against cruel and unusual punishment, an inmate must show two elements.  First, a prisoner must show that the condition, either alone or in combination with other conditions, deprived him of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human need."  Wilson v. Seiter, 501 U.S. 294 (1991) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  The Supreme Court has explained that the first showing requires the court objectively to determine whether the deprivation of the basic human need was "sufficiently serious."

> [E]xtreme deprivations are required to make out a conditions-of-confinement claim.  Because routine discomfort is "part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation."

Hudson v. McMillan, 503 U.S. 1, 9 (1992) (citations omitted).

Second, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials.  Farmer v. Brennan, 511 U.S. 825, 833 (1994); Wilson, 501 U.S. at 297; Rhodes, 452 U.S. at 347.  The second prong requires a court subjectively to determine whether the

officials acted with a sufficiently culpable state of mind.  *Id.*  "[O]nly the unnecessary and wanton infliction of pain implicates the Eighth Amendment."  Farmer, 511 U.S. at 834 (quotation omitted).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . .  The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."

Farmer, 511 U.S. at 838.  Furthermore, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause."  *Id.*, 511 U.S. at 845.  Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.

First, mere threats made by a guard do not satisfy the objective component of the Eighth Amendment.  Northington v. Jackson, 973 F.2d 1518, 1524 (10th Cir. 1992) (noting that among the actions "necessarily excluded from the cruel and unusual punishment inquiry ... are verbal threats and harassment ."); Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir.1996) (holding that verbal threats and harassment do not state an Eighth Amendment claim), *amended by*, 135 F.3d 1318 (9th Cir.1998); Williams v. Gobles, 211 F.3d 1271 (Table), 2000 WL 571936, *1 (6th Cir. 2000) (holding that neither verbal harassment nor threats constitute punishment within the context of the Eighth Amendment).  Hence, Plaintiff's assertions of Defendants' verbal threats does not state a constitutional violation.

Second, Plaintiff fails to allege any facts to demonstrate that the conditions of his confinement deprived him of any basic human need such as food, clothing, shelter, sanitation, medical care or personal safety.  Neither classification nor confinement to segregation, either

7

administrative or punitive, implicates the Cruel and Unusual Punishment Clause of the Eighth Amendment unless the conditions themselves are cruel and unusual.  Hutto v. Finney, 437 U.S. 678, 686 (1978); Spaight v. Coughlin, 104 F.3d 350 (Table), 1996 WL 518507 (2d Cir. 1996), *cert. denied*, 117 S.Ct. 972 (1997); Young v. Quinlan, 960 F.2d 351, 363 (3d Cir. 1992); Sheley v. Dugger, 833 F.2d 1420, 1428-29 (11th Cir. 1987); Gibson v. Lynch, 652 F.2d 348, 352 (3d Cir. 1981) ("administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment") (citing Hutto), *cert. denied*, 462 U.S. 1137 (1983).

While he does allege that the AC cells were filthy and he did not get clean underwear for three weeks, such allegations do not rise to a constitutional violation.  The length of exposure to unsanitary conditions is one consideration in evaluating the objective prong of the Eighth amendment.  Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir.1994).  Here, Plaintiff alleges that he was in AC only three weeks.  The Constitution does not mandate comfortable prisons. Rhodes, 452 U.S. at 349.  Prisons housing "persons convicted of serious crimes cannot be free of discomfort."  *Id*.  The Plaintiff's allegations do not demonstrate inhumane treatment or the substantial risk of serious harm.  They do not state that he was deprived of "the minimal civilized measure of life's necessities."  Accordingly, Plaintiff fails to allege any facts to demonstrate a violation of the Eighth Amendment with respect to the conditions of his confinement.  *Accord* Griffin v. Vaughn, 112 F.3d. 703 (3d Cir. 1997) (holding that the restrictive conditions in AC in the Pennsylvania state correctional institutions do not violate the Eighth Amendment).

Third, the loss of job and program opportunities did not violate his rights under the Eighth Amendment.  *See* Rhodes v. Chapman, 452 U.S. 337, 348 (1981) (holding that certain deprivations such as limited work and educational opportunities do not fall within the broad compass

of "punishments" within the meaning of the Constitution); <u>Inmates of Occoquan v. Barry</u>, 844 F.2d 828, 836 (D.C.Cir.1988).

Finally, his claims regarding his cellmate Borum do not state an Eighth Amendment claim.  In the context of a "failure to protect" claim, a plaintiff must demonstrate that:  1) he is incarcerated under conditions posing a substantial risk of serious harm; and 2) prison officials showed "deliberate indifference" to such risk.  <u>Framer</u>, 511 U.S. at 834.  Plaintiff's own admissions are insufficient to demonstrate a violation of the Eighth Amendment based on the Defendants' alleged failure to protect him from injury by inmate Borum. Specifically, Plaintiff has not demonstrated that Defendants acted with deliberate indifference to his safety because Plaintiff admits that he never told them about Borum's alleged razor when he requested a cell change.

To show deliberate indifference, the prison official need not believe or intend that the inmate will actually be harmed; rather, he is liable if he consciously ignores a <u>known substantial risk</u> to an inmate's safety.  <u>Farmer</u>, 511 U.S. at 842.  Here, there is no allegation that any Defendant was aware, or should have been aware, of any threat to Plaintiff's safety.  Specifically, Plaintiff makes no allegation that Borum was a known security risk or that he and Borum had had any altercation in the past.  Nothing in the record suggests that Defendants should have been aware that Borum posed a significant risk.  Thus, his allegations do not state a claim under the Eighth Amendment for failure to protect.

## 2. Fourteenth Amendment

Plaintiff also makes assertions concerning violations of his due process and equal protection rights.  These assertions invoke the protections of the Fourteenth Amendment, which provides as follows:

Section 1.  All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and

the State wherein they reside.  No State shall make or enforce any law
which shall abridge the privileges or immunities of citizens of the
United States; nor shall any State deprive any person of life, liberty,
or property, without due process of law; nor deny to any person within
its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, §1.

### A. Entitlement to Due Process Protections

The Due Process Clause does not protect every change in the conditions of
confinement having a substantial adverse impact on a prisoner.  Meachum v. Fano, 427 U.S. 215, 224
(1976).  The Due Process Clause shields from arbitrary or capricious deprivation only those facets
of a convicted criminal's existence that qualify as liberty or property interests.  Hewitt v. Helms, 459
U.S. 460 (1983); Morrissey v. Brewer, 408 U.S. 471 (1972).  The types of protected liberty interests
are not unlimited.  The interest must rise to more than an abstract need or desire and must be based
on more than a unilateral hope.  Rather, an individual claiming a protected interest must have a
legitimate claim of entitlement to it.  Greenholtz v. Inmates of Nebraska Penal and Correctional
Complex, 442 U.S. 1, 7 (1979) (citation omitted).

A procedural due process analysis involves a two step inquiry:  1) does the
complaining party have a protected liberty or property interest and, if so, 2) does the available process
comport with all constitutional requirements.  Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000).
Thus, the threshold question presented by Petitioner's claims is whether Defendants' actions impacted
a constitutionally-protected liberty interest.  Resolution of this claim is addressed by referring to the
United States Supreme Court's opinion in Sandin v. Conner, 515 U.S. 472 (1995).  In Sandin, the
Supreme Court pronounced a new standard for determining whether prison conditions deprive a
prisoner of a liberty interest that is protected by due process guarantees.  Specifically, the Supreme
Court held that prison conditions do not impact a protectable liberty interest unless they result in an

10

"atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."
Sandin, 515 U.S. at 483 (emphasis added).

At issue in Sandin was whether the plaintiff's thirty-day detention in disciplinary custody in a Hawaii prison impacted any protectable liberty interest under the Fourteenth Amendment. The Supreme Court concluded that the prisoner in Sandin did not have a protected liberty interest in remaining free of disciplinary detention or segregation because his thirty-day disciplinary detention, though punitive, did not present a dramatic departure from the basic conditions of his sentence. In finding that the prisoner's 30-day confinement in disciplinary custody did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest, the Supreme Court noted the following three factors: 1) the relatively short duration of the segregation; 2) the similarity between the conditions of confinement in disciplinary segregation and the conditions imposed upon other inmates; and 3) the lack of any direct collateral consequences affecting the length of the prisoner's underlying sentence. Applying this new test, the Supreme Court concluded that the prisoner in Sandin did not have a protected liberty interest in remaining free of disciplinary detention or segregation because his thirty-day disciplinary detention, though punitive, did not present a dramatic departure from the basic conditions of his sentence.

Plaintiff alleges that he was confined in AC for less than a month. Employing the due process analysis announced in Sandin, the federal courts, including the United States Court of Appeals for the Third Circuit, have concluded that placement in restrictive confinement for periods of up to one year, and more, does not trigger a constitutionally protected liberty interest as it does not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life. *See, e.g.*, Smith v. Mensinger, 293 F.3d 641 (3d Cir. 2002) (upholding District Court's dismissal of prisoner's due process claim concerning seven months disciplinary detention); Griffin v. Vaughn, 112

F.3d 703 (3d Cir. 1997) (holding that it is not atypical to be exposed to conditions of administrative custody for periods as long as 15 months as such stays are within the expected parameters of an inmate's sentence).

Under the authority discussed above, this Court must conclude that Plaintiff's 30-day confinement in AC did not impose an atypical and significant hardship in relation to the ordinary incidents of his prison sentence sufficient to give rise to a protected liberty interest.  Accordingly, this claim should be dismissed.

Plaintiff also asserts that Defendants violated his constitutional rights by filing pull-up reports against him, which resulted in his removal from the TC program.  As an initial matter, a prisoner does not have a constitutional right to be free from being falsely or wrongly accused of conduct that may result in the deprivation of a protected liberty interest.  Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986), cert. denied, 485 U.S. 982 (1988).  In other words, the mere filing of false charges against an inmate does not constitute a per se constitutional violation.  Id.  In light of the Supreme Court's ruling in Sandin, however, Plaintiff has not even demonstrated that he had a constitutionally protected liberty interest that was offended by Defendants' actions in allegedly issuing false reports.  Thus, it is unlikely that the filing of false charges would state a constitutional claim on the facts before this Court.  See Strong v. Ford, 108 F.3d 1386 (Unpublished Opinion), 1997 WL 120757 (9th Cir. 1997) (the alleged making of a false charge, however reprehensible or violative of state law or regulation, does not constitute deprivation of a federal right protected by 42 U.S.C. § 1983 when it does not result in the imposition of an atypical hardship on the inmate in relation to the ordinary incidents of prison life).

Second, Plaintiff does not have any constitutionally protected liberty interest in participating in prison programs.  Padilla v. Beard, 2006 WL 3321104, *2 (3d. Cir. Nov. 16, 2006).

Thus, his claim of discharge from the TC program, loss of sixty days pay, and loss of job and program eligibility for sixty days does not state a violation of Plaintiff's due process rights. Accordingly, these claims should be dismissed.

Third, Plaintiff has no constitutional right to a funeral furlough.  Fisher v. McBride, 2007 WL 120079, *5 (D. Del. Jan. 12. 2007); Mills v. Walker, 2005 WL 2807171 (D.N.J. Oct. 25, 2005) (holding that there is no constitutionally protected liberty interest in the attendance of a funeral for either a pretrial detainee or convicted prisoner).

Finally, Plaintiff does not have a constitutionally protected interest in parole. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979).  Further, the existence of a state parole system alone does not create a constitutionally-protected interest. Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).  Instead a liberty interest for purposes of parole would only arise if the state code requires a parole board to make its decision based upon the existence or absence of a particular factor.

The Pennsylvania Probation and Parole Act, 61 Pa. Stat. 331.1, *et. seq.*, does not grant Pennsylvania state prisoners any constitutionally-protected liberty interest in being released on parole prior to the expiration of their maximum terms.[3]  Pennsylvania law unambiguously provides that a prisoner is not entitled to release from prison until the expiration of his maximum sentence.  *See* Krantz v. Pennsylvania Bd. of Probation & Parole, 86 Pa. Commw. 38, 41, 483 A.2d 1044, 1047 (1984).  Nothing in the Pennsylvania Parole Act (or any other provision of Pennsylvania law) requires the Board to release a prisoner on parole prior to the expiration of his maximum term.  The

_____

[3]  *See, e.g.*, McFadden v. Lehman, 968 F. Supp. 1001, 1004 (M.D. Pa. 1997) (Pennsylvania has not created an enforceable liberty interest in parole, rehabilitative pre-release programs, or in therapy programs); Rodgers v. Parole Agent SCI-Frackville, Wech, 916 F. Supp. 474, 476 (E.D. Pa. 1996); McCrery v. Mark, 823 F. Supp. 288 (E.D. Pa. 1993).

Board has complete discretion to determine whether an inmate is sufficiently rehabilitated such that he will be permitted to serve the remainder of his sentence outside the prison walls on parole. Although a prisoner is <u>eligible</u> for parole at the end of his minimum term, nothing in Pennsylvania law or the United States Constitution requires a prisoner to be released at such time.

The discussion above makes clear that Petitioner does not have a constitutionally-protected liberty interest in release on parole that arises under state law. Because a Pennsylvania prisoner has no liberty interest in obtaining parole, he cannot complain of the constitutionality of procedural devices attendant to parole decisions. <u>Burkett v. Love</u>, 89 F.3d 135, 141 (3d Cir. 1996); <u>Rodgers v. Parole Agent SCI-Frackville, Wech</u>, 916 F. Supp. 474, 476 (E.D. Pa. 1996). Thus, the failure of DOC or the Board to release Plaintiff on parole prior to the expiration of his three year sentence does not state a violation of his procedural due process rights.

## B. <u>Equal Protection</u>

Plaintiff asserts that DOC's alleged policy of seperating races in individual cell assignments violates his right to equal protection. The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.' " <u>Artway v. Attorney General of State of N.J.</u>, 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting <u>City of Cleburne, Tex. v. Cleburne Living Center</u>, 473 U.S. 432, 439 (1985)).

The level of scrutiny applied to ensure that classifications comply with this guarantee differs depending on the nature of the classification. Classifications involving suspect or quasi-suspect class, or impacting certain fundamental constitutional rights, are subject to heightened

14

or "strict" scrutiny and are sustained if they are suitably tailored to serve a compelling state interest. See McLaughlin v. Florida, 379 U.S. 184 (1964); Graham v. Richardson, 403 U.S. 365 (1971). Other classifications are subject to the "rational basis" test, which requires that a classification need only be rationally related to a legitimate state interest to survive an equal protection challenge. F.C.C. v. Beach Communications, Inc., 508 U.S. 307 (1993) (statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts); Chapman v. United States, 500 U.S. 453, 465 (1991).  Moreover, when evaluating an equal protection claim, the district court should give recognition to the discretion which is normally vested in prison officials.  Farmer v. Carlson, 685 F. Supp. 1335, 1344 (M.D. Pa. 1988).

          Here, assuming the truth of Plaintiff's allegations and applying strict scrutiny, prison officials have a compelling state interest in protecting inmates from race-based violence, which can justify separating races in individual cells.  It is widely known that prison gangs inflict egregious harm to members of rival gangs and that virtually every gang is racially motivated.  See Lee v. Washington, 390 U.S. 333, 334 (1968) (per curiam) (holding that the necessities of prison security and discipline are a compelling government interest that may justify the use of race that is narrowly tailored to address those necessities); Gutter v. Bollinger, 539 U.S. 306, 353 (2003)  (THOMAS, J., concurring in part and dissenting in part) (citing Lee, for the principle that "protecting prisoners from violence might justify narrowly tailored racial discrimination).  See also Pell v. Pecunier,  417 U.S. 817, 823 (1974) ("[C]entral to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves").  Thus, Plaintiff's allegation regarding cell assignment does not state an equal protection claim.

III.        **CONCLUSION**

It is respectfully recommended that Plaintiff's Complaint be dismissed in accordance with the Prison Litigation Reform Act, 28 U.S.C. § 1915(e)(2)(B)(ii) and/or 28 U.S.C. § 1915A for failure to state a claim upon which relief can be granted under 42 U.S.C. § 1983.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation.  Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

Lisa Pupo Lenihan
United States Magistrate Judge

cc:        The Honorable Gary L. Lancaster
United States District Judge

William J. Dumas, GM-3654
S.C.I. Fayette
P.O. Box 9999
LaBelle, PA 15450-0999